UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WEATHERFORD INTERNATIONAL, INC. | § | |
| and WEATHERFORD/LAMB, INC. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. H-03-CV-05383 |
| vs. | § | |
| | § | |
| | § | |
| CASETECH INTERNATIONAL, INC. | § | |
| | § | |
| Defendant. | § | |

**CLAIM CONSTRUCTION MEMORANDUM AND ORDER**

**I.    INTRODUCTION**

Weatherford International, Inc. and Weatherford/Lamb, Inc. (collectively "Weatherford") have accused CaseTech International, Inc. ("CaseTech") of infringing United States Patent No. 5,575,333 ("the '333 patent"). This patent infringement case is now before the Court for a determination of the meaning of various disputed terms of the '333 patent.

Based on a review of the parties' filings, the intrinsic evidence of record, oral arguments presented to the Court, and the recommendation of a Court-appointed Special Master, the Court adopts the following constructions.

**II.    LEGAL STANDARDS FOR CLAIM CONSTRUCTION**

"It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, *i.e.,* the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996).

Claim construction analysis "must begin and remain centered on the language of the claims themselves, for it is that language the patentee chose to use to 'particularly point[] out and distinctly claim[] the subject matter which the patentee regards as his invention.'" *Interactive Gift Express, Inc. v. Compuserve, Inc.,* 256 F.3d 1323, 1331 (Fed. Cir. 2001) (quoting 35 U.S.C. § 112). The words of the claims define the patented invention's scope, *Bell Communications Research, Inc. v. Vitalink Communications Corp.,* 55 F.3d 615, 619 (Fed. Cir. 1995), and the claim terms are initially given their ordinary and accustomed meaning as understood by one of skill in the art. *See Alloc, Inc. v. International Trade Commission,* 342 F.3d 1361, 1368 (Fed. Cir. 2003).

There is a heavy presumption that claim terms carry their ordinary and customary meaning; this presumption is only rebutted: "(1) where the patentee has chosen to be his own lexicographer, or (2) where a claim term deprives the claim of clarity such that there is no means by which the scope of the claim may be ascertained from the language used." *Bell Atlantic Network Servs., Inc. v. Covad Communications Group, Inc.,* 262 F.3d 1258, 1268 (Fed. Cir. 2001) (quotation and citation omitted).

The Federal Circuit has also stated that "[a]mong the intrinsic evidence, the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Teleflex, Inc. v. Ficosa North America Corp.,* 299 F.3d 1313, 1325 (Fed. Cir. 2002) (quotation and citation omitted). The specification "may aid the court in interpreting the meaning of disputed claim language," *Comark Communications, Inc. v. Harris Corp.,* 156 F.3d 1182, 1187 (Fed. Cir. 1998); it may not, however, be used to redefine particular claim terms away from their ordinary and customary meaning, unless the intrinsic evidence "clearly set[s] forth or clearly redefine[s] a claim term so

as to put one reasonably skilled in the art on notice that the patentee intended to so redefine the claim term." *Bell Atlantic,* 262 F.3d at 1268 (internal quotations omitted).  The Court must, therefore, review the specification in order to determine whether the Court must deviate from the ordinary and accustomed meaning of the claim terms.  *Id.*

Where a specification does not require a limitation, the limitation should not be read into the claims.  *See E. I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.,* 849 F.2d 1430, 1433 (Fed. Cir. 1988).  "[P]articular embodiments appearing in the written description will not be used to limit claim language that has broader effect."  *Innova/Pure Water, Inc. v. Safari Water Filtration Systems,* 381 F.3d 1111, 1117 (Fed. Cir. 2004).

The prosecution history of the patent, if in evidence, is "often of critical significance in determining the meaning of the claims." *Vitronics,* 90 F.3d at 1582.  The prosecution history will act to limit "the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution."  *Southwall Technologies v. Cardinal IG Co.,* 54 F.3d 1570, 1576 (Fed. Cir. 1995).  Prosecution history estoppel requires that the claims be construed in light of the proceedings before the Patent and Trademark Office during the application process.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722, 733 (2002).  The claim construction may not expand the scope of a claim to include that which has been disclaimed by the patentee during prosecution.  *See Abbott Labs. v. TorPharm, Inc.,* 300 F.3d 1367, 1372 (Fed. Cir. 2002).  "It is well settled, however, that it is the applicant, not the examiner, who must give up or disclaim subject matter that would otherwise fall within the scope of the claims." *Innova/Pure Water, Inc.,* 381 F.3d at 1124.

In most situations, the intrinsic record of the patent will be sufficient to resolve any ambiguity as to the meaning of a disputed claim term.  Reliance on extrinsic evidence, such as

expert testimony, inventor testimony, dictionaries, and technical treatises and articles, is improper where the claims, specification, and file history unambiguously define the scope of the invention. *Vitronics,* 90 F.3d at 1583.

A court may only use extrinsic evidence to aid in the proper understanding of the claims, rather than to vary or contradict claim language. *Id*. at 1584. Where the intrinsic record is unambiguous, "expert testimony regarding the meaning of a claim is entitled to no weight." *Id*.

III. **CLAIM CONSTRUCTION**

The '333 patent discloses a centralizer apparatus used in the oilfield industry to center one tubular member inside a well bore or inside another tubular member. The claimed centralizer has one or more grooves or recesses, formed in the external surface of the tubular body, which cooperate with movable spring bows to center the tubular member. The spring bows are biased radially outwardly from the casing or tubular body and are designed to flatten or collapse toward the external surface of the tubular body when forced inwardly by contact with the walls of the bore hole or with the interior of another tubular member.

A. **"Groove" or "Recess"**

The parties have agreed that the Court should apply the same interpretation to both "groove" and "recess" for claim construction purposes. *See* Transcript of Markman Hearing, p.33:7-12; Transcript of 6/21/05 Hearing, p.24:24 – 25:5. The Court adopts the following construction: "A space formed, milled, or machined into an exterior surface of a tubular body and having side walls and a middle wall there between."

The above construction encompasses all embodiments of a "groove" or "recess" disclosed within the specification of the '333 patent. This recommendation also corresponds to the ordinary and customary meaning provided by dictionary definitions, as the specification did

not reveal a clear intention to "redefine" the terms such that one reasonably skilled in the art would be put on notice that the patentee intended to so redefine the claim term.

Although CaseTech has argued for a definition such that the groove or recess "must be circumferentially fashioned in the exterior surface of the tubular body," such a construction disregards the various embodiments disclosed with a longitudinal groove or recess. *See* the '333 patent at Fig. 6, 7a, 11; col. 2, lines 12-16; claims 13-16. *See also* Transcript of Markman Hearing, p.128:25 – 129:13. The grooves and recesses described by the specification were not limited to circumferential grooves and recesses and, therefore, the limitation has not been imported into the claims.

CaseTech has also argued that the phrase "at the expense of reducing the usual tubing or casing wall thickness" should be included in the construction of a "groove" or "recess." This language, however, does not appear in the patent and was not a phrase used by the inventors to describe their invention. The patent does not include a discussion of, or definition for, the "usual casing wall thickness." While the phrase does appear in the prosecution history, it is the Examiner who chooses to characterize the invention with these words. The patentee neither concurred nor disagreed with this language choice. The phrase "into an exterior surface of a tubular body," however, does appear in the patent and more appropriately describes the arrangement of the "groove" or "recess."

**B.     "And"**

The parties have agreed with the Court's statement that the term "and" is used in the conjunctive, as in "this and that." *See* Transcript of Markman Hearing, p.39:11 – 40:8. Any related disagreement seems to be more appropriately directed towards the definition of "limiting

. . . movement," discussed *infra.*  Therefore, the Court construes the term "and" as follows:  "A conjunctive word which joins elements."

    **C.**    **"Top Side Wall" and "Bottom Side Wall"**

The specification, including the various figures, provides guidance as to the proper construction of "top side wall" and "bottom side wall."  The Court adopts the following constructions:  The "top side wall" is "a side wall of a groove or recess opposite the bottom side wall and transverse to the longitudinal axis of the tubular body;" the "bottom side wall" is "the side wall of the groove or recess opposite the top side wall."

The specification discloses that, *in **certain** embodiments that have a lower movable collar*, the movable collar will be pushed up against the top side wall of that groove or recess as the spring bows are pulled into the larger casing due to the downward movement of the centralizer apparatus.  *See* the '333 patent at col. 2, lines 48-51.  Several of the embodiments, however, do not include a movable collar disposed within a groove or recess.  *See, e.g.,* the '333 patent at Fig. 6.  In the embodiment depicted in Figure 6, it does not appear that the spring bow will physically contact the side walls of the groove or recess.  In other embodiments, the movable collar disposed within the groove or recess will not necessarily contact a top or bottom side wall.  *See, e.g.,* the '333 patent at Figs. 4 and 5.

The grooves or recesses in each of these embodiments do, however, have a "top side wall" and a "bottom side wall."  While contact with the top side wall and/or bottom side wall does occur in some embodiments (*e.g.*, Figs. 1a and 1e of the '333 patent), physical contact with a top or bottom side wall clearly does not occur in every claimed embodiment.  The possibility of physical contact, therefore, cannot be used to define the terms "top side wall" and "bottom side wall."

In each of the claimed embodiments that include a "top side wall" and a "bottom side wall," the side walls of the groove or recess are transverse to the longitudinal access of the tubular body.  The proper construction for top side wall, therefore, is "a side wall of a groove or recess opposite the bottom side wall and transverse to the longitudinal axis of the tubular body."  The "bottom side wall" is "the side wall of the groove or recess opposite the top side wall."

CaseTech's proposed construction for "top side wall" also included a limitation that the wall must be "formed, milled or machined into the exterior surface of the tubular body."  As this description appropriately appears in the recommended construction for "groove" or "recess," the Court has chosen not to include the phrase in the constructions for "top side wall" and "bottom side wall."

### D.      "Limiting . . . Movement"

The parties are in significant disagreement over the proper construction of the phrase "limiting . . . movement."  The phrase appears in the patent in reference to limiting the movement of a first and/or second collar.

Upon review of the intrinsic record and various dictionary definitions, the Court adopts the following construction: "The top side wall and bottom side wall form boundaries beyond which a collar cannot move."

CaseTech has cited various definitions for the term "limit":

"limit" >n. 1. a point or level beyond which something *does not or may not* extend or pass.

v. "limiting" >[trans.] set or serve as a limit to . . . .

limit n. 1. The point, edge or line beyond which something *cannot or may not* proceed.

CaseTech's Presentation Materials for Hearing on Claim Construction Objections, tab 59 (emphasis added).  None of these definitions support CaseTech's argument that a collar must physically contact each side wall (top and bottom walls) in order for the side walls to "limit" the movement of the collar.

Furthermore, the claims define the invention, and the requirement of physical contact does not appear in the claims.  Nor does the specification provide that, for those embodiments with a movable collar within a groove or recess, the movement of the collar **must** be limited by physical contact.

In construing the phrase "limiting . . . movement," the Court must consider each embodiment that falls within the claims.  This includes all embodiments with a collar movably disposed within a groove or recess, whether the device has one collar, two collars, a movable bottom collar, a movable top collar, or two collars movable within grooves or recesses.  The construction of the phrase "limiting . . . movement" must encompass each embodiment, and "particular embodiments appearing in the written description will not be used to limit claim language that has broader effect."  *Innova/Pure Water, Inc.,* 381 F.3d at 1117.

Although extrinsic to the '333 patent, the Court has reviewed the new evidence offered by CaseTech relating to the prosecution of the '641 application to determine whether the examiner's statements made during the prosecution of the '641 application can help this Court properly understand the claims of the '333 patent.

CaseTech's arguments and the response of the examiner were based entirely on one embodiment of the '333 patent – the embodiment with two movable collars.  Specifically, the examiner seems to have limited his consideration of the '333 patent to a two collar embodiment

that appears in Figures 1a, 1e, and 2.  This is likely because each claim of the '641 application requires two movable collars.

As an examiner is assumed to have expertise in interpreting the relevant prior art references and to be familiar with the level of skill in the art, the comments of the examiner related to the prosecution of the '641 application are essentially expert testimony regarding the two movable collar embodiments of the '333 patent.  Based on these figures, the examiner ultimately concurred in and/or deemed most persuasive CaseTech's argument that the '333 patent appears to require at least two should structures or stops to limit movement of the collar. These arguments, however, do not apply to each of the embodiments disclosed by the '333 patent.

As previously stated, this Court's construction of the phrase "limiting . . . movement" must encompass each embodiment of the '333 patent, and individual embodiments appearing in the written description cannot limit claim language with a broader effect.  The construction must incorporate all embodiments.

This Court considers the intrinsic record of the '333 patent to be unambiguous; therefore, reliance on extrinsic evidence to vary the meaning of the claim terms would be improper. Further, it is not the role of the patent examiner to properly construe the claim terms found in cited prior art references.  The comments made by the examiner of the '641 application are therefore neither relevant nor persuasive to the proper construction of the claim terms of the '333 patent.

The proper construction of the phrase "limiting . . . movement" is "the top side wall and bottom side wall forming boundaries beyond which a collar cannot move."  This is the only construction that applies equally to the various embodiments disclosed by the specification,

including those in which it does not appear that the collar is ever likely to physically contact a side wall. *See, e.g.,* the '333 patent at Fig. 5.

IV.    **CONCLUSION**

The Court finds and holds that the foregoing claim constructions are applicable to this case.

IT IS SO ORDERED.

SIGNED this 12th day of August, 2005.

_____

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE


**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS
ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY
AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN
SENT ONE BY THE COURT.**