UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
ENTERED

SEP 1 6 2005

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| WEATHERFORD INTERNATIONAL, INC. and WEATHERFORD / LAMB, INC. | § § § § | |
| Plaintiffs, | § § | Civil Action No. H-03-CV-05383 |
| VS. | § § § § | |
| CASETECH INTERNATIONAL, INC. | § § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER IN RESPONSE TO CASETECH'S MOTION FOR RECONSIDERATION

I.  INTRODUCTION

Weatherford International, Inc. and Weatherford / Lamb, Inc. ("Weatherford") have accused CaseTech International, Inc. ("CaseTech") of infringing United States Patent No. 5,575,333 ("the '333 patent").

The parties presented claim construction arguments at hearings held on September 20, 2004 and June 21, 2005. On June 30, 2005, CaseTech filed a Motion for Consideration of Newly Discovered Evidence in Connection with *Markman* Issues. CaseTech requested this Court to exercise its discretion to admit the prosecution file history of CaseTech's Patent Application 10/302641 ("the '641 application"), arguing that this file history is directly relevant to the claim construction for the '333 patent. This Court granted that Motion, considered the extrinsic evidence offered by CaseTech, and issued its Claim Construction Memorandum and Order on August 12, 2005 ("Claim Construction Order").

CaseTech has now filed a Motion for Reconsideration arguing that this Court has made several errors of law in its Claim Construction Order.

Based on a review of CaseTech's briefing and relevant legal authorities, the Court denies CaseTech's Motion for Reconsideration and adopts the constructions offered by this Court's August 12, 2005 Claim Construction Order.

## II.   LEGAL STANDARDS

Claim construction analysis "must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chosen to use to 'particularly point[ ] out and distinctly claim[ ] the subject matter which the patentee regards as his invention.'" *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001). The words of the claims define the patented invention's scope. *Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 619 (Fed. Cir. 1995).

An "[i]nterpretation of a disputed claim term requires reference not only to the specification and prosecution history, but also to *other claims*." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed. Cir. 1995) (emphasis added) (citing *Fonar Corp. v. Johnson & Johnson*, 821 F.2d 627, 631 (Fed. Cir. 1987) (*overruled in part and on other grounds by Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 90 (1993))). Claim terms should be interpreted consistently with other appearances in other claims of the same patent. *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001). This includes appearances of the term in unasserted claims. *See Southwall Techs., Inc.*, 54 F.3d at 1579; *Fonar Corp.*, 821 F.2d at 631-32.

Claim construction analysis also requires an examination of the written description and drawings to determine "whether the patentee has disclaimed subject matter or has otherwise

limited the scope of the claims." *Rexnord Corp.*, 274 F.3d at 1343. The Federal Circuit has stated that "[a]mong the intrinsic evidence, 'the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

After the written description and drawings have been considered, the analysis requires that "the same confirmatory measure" be taken with the prosecution history. *Rexnord Corp.*, 274 F.3d at 1343. The prosecution history will act to limit "the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution." *Southwall Techs., Inc.*, 54 F.3d at 1576. The claim construction may not expand the scope of a claim to include that which has been disclaimed by the patentee during prosecution. *See Abbott Labs. v. TorPharm, Inc.*, 300 F.3d 1367, 1372 (Fed. Cir. 2002). "It is well settled, however, that it is the applicant, not the examiner, who must give up or disclaim subject matter that would otherwise fall within the scope of the claims." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1124 (Fed. Cir. 2004).

In most situations, the intrinsic record of the patent will be sufficient to resolve any ambiguity as to the meaning of a disputed claim term. A court may only use extrinsic evidence to aid in the proper understanding of the claims, rather than to vary or contradict claim language. *Vitronics Corp.*, 90 F.3d at 1584. Where the intrinsic record is unambiguous, "expert testimony regarding the meaning of a claim is entitled to no weight." *Id.*

**III.   ASSERTED ERRORS IN THE COURT'S ORDER**

The '333 patent discloses a centralizer apparatus used in the oilfield industry to center one tubular member inside a well bore or inside another tubular member. The claimed centralizer has one or more grooves or recesses, formed in the external surface of the tubular body, which cooperate with movable spring bows to center the tubular member. The spring bows are biased radially outwardly from the casing or tubular body and are designed to flatten or collapse toward the external surface of the tubular body when forced inwardly by contact with the walls of the bore hole or with the interior of another tubular member.

This Court responds to CaseTech's arguments regarding errors in the Claim Construction Order as follows.

**A.   Failure to Define "Groove" as Used in the Claims in Issue in this Matter**

CaseTech has argued that this Court committed clear error when it interpreted the term "groove" as used in all claims, not merely the asserted claims. In support, CaseTech has pointed to the Federal Circuit's statement that "only those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy." *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999). The construction of the terms "groove" or "recess" are in dispute, however, and this Court has only construed them to the extent necessary.

The Federal Circuit has repeatedly stated that the interpretation of a claim term requires an analysis of other claims. Claim terms must be interpreted consistently with appearances in other claims of the same patent, including appearances in unasserted claims. *See Southwall Techs., Inc.*, 54 F.3d at 1579; *Fonar Corp.*, 821 F.2d at 631. Claim terms must also be used consistently between the claims and the specification.

This Court's Claim Construction Order supplied the same construction for the terms "groove" and "recess." The parties agreed that this was proper. *See* Transcript of Markman Hearing at 33:7-12; Transcript of 6/21/05 Hearing at 24:24 – 25:5. The written description and the claims also show that this interpretation is proper, as the terms are consistently equated throughout the patent. *See* the '333 patent at col. 2, lns. 10-16; col. 3, lns. 11-14; col. 5, lns. 29-38 (describing Fig. 6); col. 5, lns. 39-47 (describing Figs. 7a and 7b); col. 6, lns. 28-38.

For example, in the written description, Figure 6 is described as having spring bows receivable in and movable in a "groove." Claim 15, which claims the embodiment shown in Figure 6, calls this "groove" a "spring bow recess in the tubular body for receiving a portion of each spring bow...." Figure 7a would also be covered by Claim 15, and the written description describes this embodiment as having a "groove or recess . . . to receive some, a major portion of, or all of [the spring bow] upon collapse."

The terms "groove" and "recess" are used interchangeably throughout the claims and written description, and the construction of these terms must be consistent and encompass all appearances of the terms. The construction adopted by this Court defines "groove" or "recess" consistent with its use throughout the '333 patent: "A space formed, milled, or machined into an exterior surface of a tubular body and having side walls and a middle wall therebetween." Claim Construction Order at 4. This construction corresponds to the ordinary and customary meaning provided by dictionary definitions, as the specification did not reveal a clear intention to "redefine" the terms such that one reasonably skilled in the art would be put "on notice that the patentee intended to so redefine the claim term." Claim Construction Order at 5.

5

### B. Failure to Consider Dispositive Intrinsic Evidence

CaseTech has also argued that this Court committed clear error when it failed to accord proper deference to the statements of the examiner in the prosecution history for the '333 patent. CaseTech argues that, based on statements by the examiner, the phrase "at the expense of reducing the usual tubing or casing wall thickness" should be included in the construction of a "groove" or "recess."

As previously stated, the patentee neither concurred nor disagreed with this characterization by the examiner. While the Court agrees with CaseTech that "the patent and its prosecution history both serve to give the public notice about what is patented and what is not patented," the examiner of the '333 patent was not attempting to determine the proper construction for the claim terms. The examiner's language does not appear in the patent, the language was never used by the inventors to describe their invention, the patent does not include a discussion of or definition for the "usual casing wall thickness," and the patentee neither concurred nor disagreed with this language choice.

The phrase "into an exterior surface of a tubular body," however, does appear in the patent, is the inventor's chosen language, and therefore more appropriately describes the arrangement of the "groove" or "recess."

### C. Use of Uncontested Embodiments to Expand the Definition of Contested Embodiments

CaseTech again argues that this Court committed clear error when it considered unasserted embodiments within its claim construction analysis. As previously stated, the Federal Circuit has repeatedly held that the interpretation of a claim term requires an analysis of other claims. Claim terms must be interpreted consistently with appearances in other claims of the

same patent, including appearances in unasserted claims. *See Southwall Techs., Inc.*, 54 F.3d at 1579.

This Court considered the written description, the drawings, the prosecution history, and each of the issued claims when construing the disputed claim terms. As previously argued by CaseTech, the inventors use the drawings to "teach by illustration." *See* CaseTech's Objections to Expert's Proposed Claim Construction Order at 9. While this Court's Claim Construction Order referred to specific figures in the specification as examples, the Order also clearly states that each claimed embodiment was considered for this Court's claim construction. No offered construction was based solely on the patent figures.

Referring to the patentee's comments during the prosecution of the '333 patent related to the presence of a groove and movable collar, CaseTech appears to suggest a disclaimer argument. Although the issue has not been clearly developed, it is possible that the patentee may have disclaimed certain embodiments disclosed by the patent, and these embodiments may be covered by claims that ultimately issued as part of the '333 patent. Any possible disclaimer made by the patentee, however, does not lead this Court to the conclusion that the top and bottom side wall of a groove or recess will necessarily *always* provide a stop through physical contact with a movable collar disposed within that groove or recess, as CaseTech has argued.

This Court's construction does not rely on any one embodiment, potentially disclaimed or otherwise. While this Court has recognized that contact with the top side wall and/or bottom side wall does occur in some embodiments, physical contact with the top and bottom side wall does not occur in every claimed embodiment. The possibility of physical contact, therefore, cannot be used to define the terms "top side wall" and "bottom side wall." This limitation does

not appear within the claims, specification, or prosecution history, and this Court will not introduce such a limitation.

D.  **Reliance on Drawings Without Accompanying Text**

Again, while this Court's Claim Construction Order referred to specific figures in the specification as illustrations, the Order also clearly states that each claimed embodiment described in the claims, the figures, and the written description were considered for this Court's claim construction. As previously stated by CaseTech, the inventors use the drawings to "teach by illustration" (*See* CaseTech's Objections to Expert's Proposed Claim Construction Order at 9), and a patent's figures may properly be considered in construing claims. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1325-26 (Fed. Cir. 2005).

Viewed together, the claims, drawings, written description, and prosecution history do not suggest that that the top and bottom side wall of a groove or recess will necessarily *always* provide a stop through physical contact with a movable collar disposed within that groove or recess.

E.  **Internal Inconsistency with Respect to the Use of Extrinsic Evidence**

CaseTech has argued that this Court committed reversible error by considering a dictionary definition to aid in the construction of the term "limiting . . . movement." As this Court understands, CaseTech argues that the extrinsic evidence offered by a dictionary varied the meaning of the claim terms.

> However, as the Federal Circuit recently stated in *Phillips v. AWH Corporation*:
>
> > Within the class of extrinsic evidence . . . dictionaries and treatises can be useful in claim construction. . . . Because dictionaries, and especially technical dictionaries, endeavor to collect the accepted meanings of terms used in various fields of science and technology, those resources have been properly recognized as among the many tools that can assist the court in determining the meaning of particular terminology to those of skill in the art of the invention. . . . Such

> evidence . . . may be considered if the court deems it helpful in determining the true meaning of language used in the patent claims.

*Phillips,* 415 F.3d at 1318 (internal citations omitted).

This Court has chosen to use a dictionary to assist in the determination of the proper meaning of disputed claim terms to those of skill in the art, as those dictionary definitions are helpful in determining the true meaning of language used in the patent claims. The dictionary definitions did not serve to vary the meaning of the claim term from its ordinary meaning to those of skill in the art.

### F. Error with Respect to Use of Uncontested Embodiments to Expand the Meaning of "Limited . . . Movement."

Again, CaseTech argues that when the Court considered any embodiment other than those at issue to define "limiting . . . movement," this Court was wrong as a matter of law. The Federal Circuit has clearly stated, however, that it is proper to consider other claims, including unasserted claims, when construing disputed claim terms. *See Southwall Techs., Inc.,* 54 F.3d at 1579; *Rexnord Corp.,* 274 F.3d at 1342.

CaseTech also argues that this Court's claim construction reads out the structural and positional limitations created by the term "limiting . . . movement." This Court disagrees. The Court's construction of the term "limiting . . . movement" properly addresses the structural and positional limitations encompassed by this term: "The top side wall and bottom side wall form boundaries beyond which a collar cannot move." Claim Construction Order at 7.

### G. Untitled Error

Finally, CaseTech has argued that this Court's definition of the term "and" is in error. On page 7 of its Claim Construction Order, this Court stated that the phrase "limiting . . . movement" "appears in the patent in reference to limiting the movement of a first <u>and/or</u> second collar."

9

This language chosen by the Court is misunderstood by CaseTech. The intended meaning of the sentence referenced by CaseTech is that the phrase "limiting . . . movement" appears in the patent in reference to limiting the movement of the first collar and to limiting the movement of the second collar where a second collar is present.

## IV. CONCLUSION

This Court has considered all arguments raised by CaseTech in its Motion for Reconsideration and does not find clear error in the Claim Construction Order. CaseTech's Motion for Reconsideration is therefore DENIED.

IT IS SO ORDERED.

SIGNED this 9th day of September, 2005.

*Exhibits to Motion for Reconsideration should be SEALED.*

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**